**Thomas M. WELCH**

v.

**R. Clarke SMITH and the Board of Bar Examiners for the State of Vermont.**

**Civ. A. No. 79–170.**

United States District Court, D. Vermont.

March 7, 1980.

---

Thomas M. Welch, pro se.

Michael R. Gadue, Asst. Atty. Gen., State of Vt., Montpelier, Vt., for defendants.

COFFRIN, District Judge.

Plaintiff took the 1978 Vermont Bar Examination and received a failing grade. He applied to this court for declaratory, injunctive, compensatory and punitive relief from actions of the Vermont Board of Bar Examiners relating to the administration and grading of the 1978 exam. Plaintiff's Complaint invokes the fourteenth amendment to the United States Constitution and, apparently, 42 U.S.C. § 1983 as jurisdictional bases.[1] We dismiss for lack of jurisdiction over the subject matter.

### Discussion

Each state has exclusive jurisdiction over admission to practice before its courts, but its admission qualifications must have "a rational connection" with applicants' "fitness or capacity to practice law." *Schware v. Board of Bar Examiners,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The Justices of the Vermont Supreme Court exercise that jurisdiction and regulate admission to the Vermont Bar by rules adopted pursuant to statutory authority. Vt.Stat.Ann. tit. 4, § 901; *In re Haddad,* 106 Vt. 322, 324, 173 A. 103, 104 (1934). The Board of Bar Examiners (the Board) constitutes an "arm" of the supreme court, assisting it in matters of admission. *In re Monaghan,* 126 Vt. 53, 57, 222 A.2d 665, 669 (1966) *(Monaghan I );* Vt.Stat.Ann. tit. 4, § 902. It is the responsibility of the Board to ascertain whether "each applicant has complied with the rules entitling him to take the examination" and to "make a thorough investigation respecting the applicant's moral character and fitness for admission and report to the court the nature and result of such investigation." Vt.Stat. Ann. tit. 12, App. I., Pt. II., R. 3(2). In addition the Board must thoroughly and impartially examine applicants on at least twelve topics selected from a list of some two dozen.[2] *Id.,* R. 4(1). When deciding upon the qualifications of applicants the

---

1. Plaintiff brings this action *pro se,* 28 U.S.C. § 1654; *Phillips v. Tobin,* 548 F.2d 408 (2d Cir. 1976), and we will therefore construe liberally the matters set forth in his complaint. *Hohman v. Hogan,* 597 F.2d 490, 492 (2d Cir. 1979) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam)).

2. Applicants for admission shall be qualified in the law upon the following subjects: evidence, domestic relations, personal property, contracts, agency, partnerships, corporations, real property, including mortgages and landlord and tenant, wills and probate law, equity jurisprudence, torts, criminal law and procedure, the important provisions of Ver-

Board considers "not only the accuracy of the answers given, but also the diction and grammatical construction of the papers submitted." *Id.*, R. 4(2). An applicant certified by the Board is not admitted to practice unless and until the Vermont Supreme Court approves his admission. *Id.*, R. 4(3).[3] We conclude that the Board's powers are derived from the supreme court and do not include the supreme court's exclusive power to grant admission.

Vermont lacks a formal procedure by rule or statute for review of an adverse Board determination, in contrast to some states. *See Richardson v. McFadden*, 563 F.2d 1130, 1132 n.3 (4th Cir. 1977) (Hall, J., concurring) (South Carolina); *Chaney v. State Bar of California*, 386 F.2d 962, 966 (9th Cir. 1967) (California). Yet by itself this lack inflicts no denial of due process or equal protection since the Vermont Supreme Court has the inherent power to hear the petition of an unsuccessful bar applicant. *See Feldman v. State Board of Law Examiners*, 438 F.2d 699, 702–03 (8th Cir. 1971).[4] The supreme court has done this, *In re Monaghan*, 126

mont statute law, the constitution of this state and of the United States, legal ethics, bankruptcy, taxation, uniform commercial code and rules of civil and appellate procedure.

Vt.Stat.Ann. tit. 12, App. I., Pt. II., R. 4(1).

3. By letter dated January 31, 1980, the court requested the parties to agree if possible on the procedures followed by the Board in certifying successful applicants to the supreme court and advising it with respect to those who do not pass the examination. The court also inquired whether the supreme court manifests approval of the successful candidates in any way other than simply by administering the oath of office and whether it takes any steps with respect to those candidates who fail. The object of the inquiry was a clearer understanding of the procedures employed by the supreme court and the Board, not to elicit evidentiary information inappropriate for consideration in determining a motion to dismiss or to require the motion to be treated as one for summary judgment pursuant to Fed.R.Civ.P. 12(b) and 56. In response to the court's inquiry counsel for defendants requested plaintiff to stipulate that an affidavit of Michael Krell, Court Administrator of the Vermont Supreme Court, be considered as evidence "based on the factual information and procedures contained therein." Plaintiff declined to do this but in a letter to defendants' counsel dated February 23, 1980, he stated he had no objection to the forwarding of the affidavit to the court as it "may be of some use to . . . [Judge Coffrin] in ruling on defendants' motion to dismiss." As the parties apparently intended, the court has considered the affidavit as helpful information although it considers the answer to question four unresponsive to the question as framed. The answers to the first three questions set forth below clearly delineate the actual procedures followed by the supreme court and the Board with respect to successful and unsuccessful applicants.

QUESTION 1. [Describe t]he actual procedure employed by the Bar Examiners in certifying successful applicants for admission to the Bar of the Vermont Supreme Court.

ANSWER: The Board submits a written motion to the Supreme Court moving the admission of named individuals. The motion is made in open court by the Chairman or a member of the Board.

QUESTION 2. What procedure is followed by the Examiners in advising the Supreme Court relative to those candidates who failed the exam?

ANSWER: The Board submits its Annual Report to the Supreme Court on the first day of the October Term. The Annual Report states relevant information about applications and the examinations and lists the successful and unsuccessful candidates.

QUESTION 3. The Court would also like to know whether the approval of the successful applicants by the Supreme Court required by Title 12, App. I, Pt. II, R. 4(3) is manifested in any particular way other than simply administering the oath of office to those who passed the exam.

ANSWER: The Supreme Court grants the motion for admissions and the clerk administers the oath.

Affidavit of Michael Krell (filed Feb. 26, 1980).

4. The view that the Vermont Supreme Court has inherent power to review the applications of unsuccessful candidates for admission to the bar is also pointed out in the answer to question four in Court Administrator Michael Krell's affidavit.

QUESTION 4. [T]he Court is interested in whether the Supreme Court takes steps of any nature with respect to those candidates who are not recommended to the Supreme Court because they did not pass the examination.

ANSWER: The Rules of Admission to the Bar of the Vermont Supreme Court do not contain any explicit administrative step to request review by the Supreme Court of an unsuccessful grade on any examination. Review not otherwise provided for in the Rules is possible if a petition is filed with the Supreme Court as a matter of original jurisdiction.

*Id.*

**156**

Vt. 193, 225 A.2d 387 (1966) (*Monaghan II*), and has stated that upon a petition showing clear and unequivocal allegations of fact sufficient to establish imposition, discrimination or manifest unfairness on the part of the Board in examining or grading an applicant, it will order an investigation to ascertain the probity of the Board's certified results. *Id.*, at 194, 225 A.2d at 387.

We are not prepared to say that upon an apposite petition by plaintiff the supreme court would investigate the instant case,[5] but there is no reason to doubt that it would consider the circumstances underlying plaintiff's contentions and decide whether they warrant further action. In any event we are satisfied that the supreme court takes the final action on an application to the Vermont Bar by expressly approving the Board's favorable recommendation, impliedly approving an unfavorable recommendation in which no review is sought, or by acting on an appropriate petition in a case involving the Board's adverse recommendation.

Despite the Vermont Supreme Court's statement that "[i]n the matter of examining and grading applicants . . . the members of the [B]oard are the exclusive judges," id., we conclude that under Vermont law the Board's adverse recommendation cannot cause a "deprivation" under 42 U.S.C. § 1983. Only the final action of the supreme court, whatever form it may take, effects such a deprivation, if any. *Chaney*, 386 F.2d at 966. The right to sue granted by 42 U.S.C. § 1983 extends only to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]." *Id.* Therefore the Board's actions cannot give rise to a right under section 1983 until they become the basis for the supreme court's final

approval or disapproval. Review of the Vermont Supreme Court's adverse determination would lie only through petition for certiorari to the United States Supreme Court. 28 U.S.C. § 1257(3).[6]

The supreme court impliedly has approved the Board's determination that plaintiff is not qualified for admission and thus has taken final action on his application. Plaintiff may not challenge that action in this court; his only recourse is to the Vermont Supreme Court or the United States Supreme Court.

For the foregoing reasons, we dismiss plaintiff's Complaint. No costs. SO ORDERED.

---

5. Plaintiff's contention that he was denied the stated amount of time to finish a pertinent portion of the exam may well state a colorable claim of unfairness.

6. Although we find that an adverse recommendation by the Board is not a deprivation under the Civil Rights Act because it is not a final

action, a contrary finding would not alter our decision to dismiss. The same result would obtain if we found that the Board's decision not to certify an applicant is, de facto and de jure, a final decision of the supreme court. Review would still lie exclusively in the United States Supreme Court by petition for certiorari. 28 U.S.C. § 1257(3).