**Alan David ROSENFELD**

v.

**Eugene V. CLARK, Paul N. Olson, Nancy Kaufman, Janet G. Murphy, Brooke Pearson, Douglas Richards, Robert D. Rachlin, Thomas B. Ragle and Charles R. Tetzlaff.**

Civ. A. No. 83–284.

United States District Court, D. Vermont.

May 11, 1984.

---

Allan David Rosenfeld, pro se.

Zander B. Rubin, Asst. Atty. Gen., State of Vt., Montpelier, Vt., for defendants.

Marilyn Hand, Dick, Hackel & Hull, Rutland, Vt., for defendant Nancy Kaufman.

COFFRIN, Chief Judge.

Plaintiff brings this action pro se under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) to recover for damages allegedly sustained as a result of improper administration of the Vermont Bar Examination ("exam") by the defendants, the individual members of the Vermont Board of Bar Examiners ("Board"). Plaintiff took the exam in February of 1983 and was initially informed that he had failed by one point. Plaintiff then appealed his score, pursuant to Vt. Stat.Ann. tit. 12, App. I, Part II §§ 10(f), (g), to the Chairman of the Board, defendant Clark. The statutory appeals process requires the Chairman to "render a ruling in writing within thirty days of the receipt of the petition for appeal as to whether the appeal has substantial merit." If the Chairman finds substantial merit, the appeal is then considered by the full Board which has another thirty days to act on the Chairman's recommendation. Vt.Stat.Ann. tit. 12 App. I, Part II, § 10(h). If the Board issues a favorable decision and the applicant is found qualified by the Character and Fitness Committee and approved by the Vermont Supreme Court, the applicant is admitted to the state bar.

Plaintiff alleges that shortly after receiving notice on April 1, 1983 that he had failed the exam; he wrote to the Board requesting a review of his score. On April 28, 1983, he received a copy of the examiners' model answers and a scoring guide to compare with a copy of his own graded exam.[1] According to plaintiff, he submitted an appeal to defendant Clark on May 9, 1983. Shortly thereafter plaintiff

---

1. Plaintiff makes no allegation in the Complaint that the approximately three week period between the time of his first request in April for the scoring review and the submission of his appeal on May 9 contributed to a violation of due process. We do not, therefore, feel bound to consider this period in our analysis but we do so because plaintiff addressed the impropriety of this alleged delay at hearing. As may be seen, however, this delay has no real effect on our holding.

by letter informed defendant Clark that he had completed all of the other requirements for admission to practice and requested an expedited review of his appeal. Plaintiff alleges that defendant Clark issued a favorable ruling, but not until June 15, 1983, some seven days after the statutorily prescribed period had run. The full Board informed the plaintiff on June 25, 1983 that a decision had issued in his favor and that his score had been adjusted up one point to the passing grade. On July 7, 1983, plaintiff appeared before the Vermont Supreme Court and was admitted to the state bar.

Plaintiff asserts a number of constitutional and state law violations. He alleges that defendant Clark violated his fourteenth amendment right to due process by exceeding the thirty day period in which the Chairman was required to have rendered his decision so that plaintiff was excluded from the practice of his profession; that defendant Clark violated his right to due process "by not reviewing and ruling on the appeal as quickly as possible"; that all of the defendants violated his fourteenth amendment right to equal protection under the law "by awarding him a failing grade at the same time they passed other applicants who had earned the same or lesser scores in the examination"; that the members of the full Board violated his right to due process "by denying him admission to the bar in a manner that did not provide a timely review of this action"; and finally, that the defendant members of the full Board carelessly and recklessly failed to fulfill their responsibility for assuring a fairly and accurately graded exam.[2] Plaintiff seeks a declaratory judgment, actual and punitive damages, and attorney's fees.

The defendants deny the plaintiff's allegations and assert as defenses lack of subject matter jurisdiction, absolute judicial immunity, the eleventh amendment, improper service, and failure to state a claim under 42 U.S.C. § 1983.

The case is presently before the court on defendants' motion for summary judgment and plaintiff's cross motion for summary judgment. For the reasons stated below, we dismiss the "Third" and "Fifth" claims contained in the Complaint for lack of subject matter jurisdiction and we grant defendant's motion for summary judgment as to the rest of plaintiff's claims.

JURISDICTION

Defendants contend that this court lacks subject matter jurisdiction over plaintiff's claims. According to the defendants, the plaintiff is entitled to appeal the decision of the Board to the Vermont Supreme Court pursuant to Vt.Stat.Ann. tit. 12, App. I, Part II, § 13(b). If the Vermont Supreme Court rendered a decision adverse to plaintiff, his only recourse would be to petition the United States Supreme Court for certiorari. A federal district court, defendants contend, is without jurisdiction to review a decision of a state court on the merits.

The defendants rely primarily on *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Welch v. Smith,* 486 F.Supp. 153 (D.Vt.1980), to support their argument. In *Feldman,* the plaintiffs had applied for waivers of a requirement of admission to the District of Columbia bar that all applicants be graduates of an approved law school. Denied the waivers by the District of Columbia Court of Appeals, the plaintiffs brought suit in federal district court alleging that the denials were arbitrary and hence in violation of the fifth amendment.

The Court first acknowledged that a federal district court is without authority to review final determinations of a state's highest court, petition for certiorari pursuant to 28 U.S.C. § 1257 being the sole avenue for review of such decisions. Federal district court jurisdiction is defeated, however, only when the state court's determination is "judicial" in nature and the plaintiff's claim was disposed of "on its

---

**2.** This last cause of action appears to be a claim for negligence under state law. In the absence of any indication to the contrary, it will be treated as such.

merits." *Id.* at 1312–1313. Because the issuance of a waiver, reasoned the Court, involved a judicial inquiry into various equitable and legal considerations, a district court did not have subject matter jurisdiction over the plaintiffs' claims that the bar associations had arrived at incorrect decisions. Therefore, to the extent that the plaintiffs sought a review of the bar associations' decisions denying the waiver, a district court lacked subject matter jurisdiction over their complaints.

On the other hand, to the extent that the plaintiff challenged the constitutional validity of an admission rule itself, the Court held that a district court would have subject matter jurisdiction. State supreme courts may act in a non-judicial capacity in promulgating rules regulating the state bar admission process.

> Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding. If this is the case, the District Court is not reviewing a state court judicial decision.

*Id.* at 1316–1317. A district court would, therefore, have jurisdiction over plaintiffs' constitutional challenge to the rules themselves.

 Applying the analysis set forth in *Feldman,* we must disagree with the defendant's contention that the Board's alleged failure to provide a timely decision and timely notification of that decision is somehow the result of a judicial proceeding. Despite defendants' reference to deci-

sions of the Vermont Supreme Court indicating that the bar admission process is a judicial function,[3] *Feldman* requires us to examine the nature and effect of the challenged action rather than its form. The plaintiff here does. not seek review of the Board's determination. Clearly this court would lack jurisdiction over a challenge to the merits of the Board's decision. Instead of attacking the decision of the Board or its Chairman—they decided his appeal had merit—plaintiff seeks a review of the alleged procedural improprieties in the exam appeal process. The Chairman is faulted for failure to comply with the timing requirements of the state statute. The entire Board is alleged to have violated plaintiff's constitutional right to due process by not providing for a "timely review" of their initial grade determination, an allegation which amounts to a claim that the statutory time period for decision of an appeal is itself unconstitutional. These claims are clearly not directed to the merits of the Board's determination.

Thus the plaintiff can in no way be said to be seeking a review of the merits of a judicial decision of a state court. The Court in *Feldman* clearly recognized the distinction between a challenge to the merits of a decision by a state supreme court and a challenge to the constitutionality of a bar admission rule or its application. We find this case more clearly related to the latter class of actions so that jurisdiction is not defeated on this basis.[4]

Defendants' reliance on *Welch* is also misplaced but for a different reason. The plaintiff in *Welch,* who received a failing grade on the 1978 Vermont bar exam, asserted that due process had been denied by

---

**3.** *In re Monaghan,* 126 Vt. 53, 58, 222 A.2d 665 (1966) (proceedings had for the admission of attorneys-at-law are judicial.); *In re Haddad,* 106 Vt. 322, 325, 173 A. 103 (1934) ("The action of the court in the exercise of this power [admission to the bar] is judicial in its character ...").

**4.** Defendants claim that plaintiff could have appealed to the Vermont Supreme Court pursuant to Vt.Stat.Ann. tit. 12, App. I, Part II, § 13(b) which provides:

> Except as otherwise provided by these Rules, an individual may appeal from a decision of the Board of Bar Examiners by filing an action with the Vermont Supreme Court as a matter of original jurisdiction ..."

Plaintiff did not seek to review the *decision* of the Board. He could not therefore have availed himself of an appeal to the Vermont Supreme Court since, having obtained a favorable decision on the merits, there was nothing left to appeal.

certain acts of the Board. This court held that the Board's negative determination was not a "final decision", since only the Vermont Supreme Court had the final authority to pass on bar admissions. Furthermore, because a challenge to the Vermont Supreme Court's final determination would only lie through petition for certiorari to the United States Supreme Court, a federal district court would not have subject matter jurisdiction over the plaintiff's claims even if they had resulted from a final decision.

In a short unpublished decision, the Second Circuit Court of Appeals affirmed, but on the basis of plaintiff's failure to state a claim rather than lack of subject matter jurisdiction. *Welch v. Smith*, No. 80–7306 (2d Cir. June 10, 1980). Although the Court of Appeals did not elaborate, our decision in *Welch* clearly cannot be cited as support for the proposition that a federal district court lacks jurisdiction over a challenge to rules and practices employed by a state board of bar examiners.[5]

■ Defendants also allege that the bar of the eleventh amendment applies because plaintiff seeks damages against the defendants in their official capacities, citing *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Although the Complaint does not precisely state the capacity in which the defendants are being sued, plaintiff contended at hearing that he sought recovery against the individual defendants rather than the state treasury and therefore that his claim falls under *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (damages

against state officials as individuals may be a permissible remedy in some circumstances notwithstanding the fact that they held public office). The question is an extremely close one, but an examination of the pleadings (as required by *Scheuer*) leads us to the somewhat tenuous conclusion that plaintiff seeks recovery against the defendants as individuals.[6] Therefore, the eleventh amendment does not apply.

■ Finally, defendants assert that this court does not have subject matter jurisdiction because plaintiff has failed to raise a substantial federal question. In order to dismiss on this basis, however, plaintiff's claims must be wholly unsubstantial or frivolous, foreclosed by prior case law, or so patently without merit as to require no meaningful consideration. *Hagans v. Lavine*, 415 U.S. 528, 536–538, 94 S.Ct. 1372, 1378–379, 39 L.Ed.2d 577 (1974).

■ We believe that plaintiff's equal protection claim ("Third Claim" in the Complaint) fails to present a substantial federal question. An allegation that a mistake in grading an exam (and plaintiff does not contest that it was anything but a mistake) gives rise to a violation of the equal protection clause of the fourteenth amendment is clearly frivolous. *See e.g. Chaney v. State Bar of California*, 386 F.2d 962, 964–966 (9th Cir.1967) (allegation that use of an essay-type bar exam violates due process is a frivolous claim which should be dismissed), *cert. denied*, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968). Since the equal protection claim has no constitutional substance, we dismiss it.

---

5. We presume that the Court of Appeals found that this court had jurisdiction over the subject matter, but since the Board's action had not finally deprived the plaintiff of any rights guaranteed by the Constitution and laws of the United States, no claim under 42 U.S.C. § 1983 had been stated.

6. Defendants are probably correct in their contention that the acts complained of were performed within the defendants' official capacities. So long as recovery is sought against the officials as individuals, however, the fact that their allegedly unconstitutional acts were done in their official capacities will not affect the

court's jurisdiction. *Scheuer v. Rhodes, supra; Sarteschi v. Burlein*, 508 F.2d 110, 113 (3d Cir. 1975). *See also Thonen v. Jenkins*, 517 F.2d 3, 6 (4th Cir.1975) (where the court could form a damage remedy so that it could run against state officials in their individual capacities, eleventh amendment was no bar); *Wright v. McMann*, 460 F.2d 126 (2d Cir.) (warden of state prison subject to personal liability for official acts where he had actual and legally implied knowledge of violation of prisoner's Eighth Amendment rights), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972).

The court cannot say, however, that plaintiff's constitutional due process claims fail to present substantial federal questions. Having discerned no jurisdictional defects in these claims, this court has subject matter jurisdiction over the plaintiff's due process claims.

■ Turning to plaintiff's state law claim ("Fifth Claim" in the Complaint), which alleges that the Board carelessly and recklessly failed to assure a timely and accurately graded exam, the court must decline to exercise pendent jurisdiction. This state law negligence claim would involve issues and evidence vastly different than might be raised in the determination of the federal claims. Further, the negligence claims appear to arise out of the Board's wholly discretionary function in preparing and grading the exam rather than out of the procedural requirements of the exam appeals process. Thus plaintiff's state law negligence claim and his constitutional claim do not arise out of the common nucleus of operative fact necessary in order for the court to be able to exercise pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). For this reason, we hold that we have no jurisdiction over plaintiff's "Fifth Claim" and accordingly dismiss it.

## DUE PROCESS CLAIMS

The defendants allege that they are entitled under Fed.R.Civ.P. 56 to summary judgment on a variety of grounds. We will assume, for purposes of this motion, that all of plaintiff's material factual allegations are true and we resolve all inferences in the plaintiff's favor. 6 Moore's Federal Practice, ¶ 56.11[1.–1] at 56–198 (1983).

Plaintiff asserts that he has been deprived of a property interest without due process of law. The extent to which the constitution protects a "right" to be admitted to a state bar was delineated in *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 238–239, 77 S.Ct. 752, 755–756, 1 L.Ed.2d 796 (1957):

A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law .... Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. (citations and footnote omitted).

The plaintiff does not allege that the Board has proposed standards which have no rational connection to his fitness to practice law, that the Board improperly assessed his qualities with respect to permissible standards, or that the Board's action was invidiously discriminatory. The plaintiff's primary complaint is that the Chairman's failure to render a decision within the time requirements of Vt.Stat.Ann. tit. 12, App. I, Part II, § 10(f) and the failure of the Chairman and the Board to act in an otherwise "timely manner" caused him to be excluded from the practice of law for a period of several weeks.

■ As to the allegations against defendant Clark, plaintiff implies that Clark's alleged failure to render his decision within the time prescribed by statute was *ipso facto* a violation of due process. Plaintiff relies on the principle that "an agency's violation of its own procedures may constitute a denial of due process, adjudicable in the courts." *Sneaker Circus, Inc. v. Carter*, 566 F.2d 396, 402 (2d Cir.1977). Certainly an agency's violation of a statutorily mandated procedure may result in a violation of due process, but it is clear that such a violation did not occur here merely because of a failure to follow the thirty day time limit. The total time allowed by state statute for the appeals process was sixty

days; thirty days were allotted for the Chairman to make his decision and thirty additional days were provided the full Board to act on the Chairman's recommendation. Although defendant Clark allegedly took thirty-seven days to render his decision, the full Board, by plaintiff's own admission, took only ten days to render their finding that plaintiff had passed the exam. Plaintiff, therefore, obtained a final decision in forty-seven days, thirteen days before the statutory period for a final decision by the full Board expired. Since the appeals process was completed well within the timing requirements set forth by statute, defendant Clark's violation of state notice requirements was not, *ipso facto*, a violation of plaintiff's right to due process.

Plaintiff also asserts, however, that whether or not defendant Clark's alleged failure to adhere to the statutory time requirements constituted a violation of due process, the total time taken by Clark and the full Board violated due process because of the urgency of plaintiff's situation. Since the Board acted within the statutorily prescribed time limit, this claim amounts to a challenge to the constitutional adequacy of the procedures set forth in the statute itself.

■ Defendants' response is that they were engaged in a process that should, taken as a whole, be characterized as a judicial function. As an arm of the Vermont Supreme Court thus engaged in an activity judicial in nature, defendants contend that they are entitled to absolute judicial immunity for their acts related to the grading of the bar exam, including any violations of notice requirements imposed by the constitution (though they deny that any violation occurred). It is well settled that a judge is entitled to absolute immunity for all acts committed within his judicial jurisdiction, even grave procedural errors. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Such immunity is intended not to exculpate corrupt or incompetent judges but to further the public inter-

est in the free exercise of judicial discretion. This limitation on the preservation of constitutional rights through personal damages suits is tolerated, however, only because of the need for judges to pursue their discretionary duties without fear of vexatious and burdensome litigation.

■ Absolute immunity from a suit for damages under § 1983 is also available to certain other public officials when such officials are required to make important and potentially controversial decisions which might subject them to frequent and obstructive harassment by litigation. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors); *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (legislators). The law only grudgingly allows absolute immunity, however; most other government officials, even those who perform highly discretionary functions, receive only the limited protection of qualified immunity. *Scheuer v. Rhodes, supra* (immunity to governor if acting in good faith and with reasonable grounds for belief); *Pierson v. Ray, supra* (immunity to police officer if arrest made in good faith and with probable cause).

We must decide, then, what degree of immunity to afford quasi-judicial officials such as the Board members here who perform duties both judicial (such as determining which applicants are qualified for admission to the bar) and ministerial (such as providing an applicant with the review results of his exam pursuant to Vt.Stat.Ann. tit. 12, App. I, Pt. II § 10(f)). Although an analogy might be made to the immunity afforded clerks of court, who perform both discretionary and ministerial functions, such a comparison is of little help since the Second Circuit has never addressed the issue and the other circuits are in utter disarray. *Compare Slotnick v. Staviskey,* 560 F.2d 31, 32 (1st Cir.1977) (absolute immunity for all acts of court clerk), *cert. denied,* 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978), *with Tarter v. Hury,* 646 F.2d 1010, 1013 (5th Cir.1981) (clerk entitled to absolute immunity for actions taken pursuant to court order or judge's

direction, qualified immunity for all other acts), *with McCray v. Maryland,* 456 F.2d 1 (4th Cir.1972) (degree of immunity depends on whether clerk exercised quasi-judicial discretion, acted pursuant to statutory authority in a ministerial duty, followed a judge's orders, or acted in violation of his statutory duty).

Defendants cite *Clark v. Washington,* 366 F.2d 678 (9th Cir.1966) as support for their contention that they are entitled to absolute immunity. In *Clark* the court afforded absolute immunity to a state bar association in a suit for damages relating to the plaintiff's disbarment. The clear intent of the court, however, was to protect the prosecutorial and judicial discretion of the bar association as it was employed in disbarment proceedings. Since the bar association had actually brought charges against the plaintiff, and a committee of the bar association had conducted a trial and issued findings, the bar association functioned as an integral part of the judicial process and was thus entitled to absolute immunity for this function.

▆▆▆ *Clark* is clearly not dispositive here since there is no challenge to any prosecutorial function the Board might have. *Clark* does, however, suggest an approach which we find appropriate. When assessing the degree of immunity to be afforded quasi-judicial officials, a court should focus on the official's function at issue. *See also McCray v. Maryland, supra,* at 3; *Kane v. Yung Won Han,* 550 F.Supp. 120, 123 (E.D.N.Y.1982). If the function involves an exercise of judicial discretion, absolute immunity should be afforded; for all other acts, a member of the Board should enjoy only qualified immunity.

▆▆▆ Unfortunately, this does not solve the problem of what immunity to afford defendants here since we must still attempt to characterize their challenged actions, no simple task in this case. It might be argued that while the Board's *decision* clearly involved a discretionary function, the Board was without discretion as to the *timing* of that decision since the statute required a decision within sixty days. On the other hand, the plaintiff has alleged that the statute which set the chronological boundaries for the decision violates due process. His very charge is that the Board had the discretion to act more expeditiously but unconstitutionally failed to exercise that discretion. We agree that an element of discretion is involved in determining the duration of a deliberative process. Certain decisions may take longer than others and a decision-making body may implicitly decide that a particular issue warrants extended consideration. Whether or not such action constitutes an exercise of *judicial* discretion is a difficult question. Ultimately we believe a decision's timing is so functionally intertwined with the decision-making process itself (which should clearly enjoy the protection of absolute immunity) that the Board should be absolutely immune from damages for the due process claims raised by plaintiff. While an allegation that the Board failed to timely render a decision does not attack the merits of that decision, it would be improper to permit a suit for damages for an alleged flaw which is "not meaningfully separable" from a protected function. *Gray v. Bell,* 712 F.2d 490, 516 (D.C.Cir.1983) (discussing sovereign immunity and the discretionary function exception of the Federal Tort Claims Act). Thus, the Board is entitled to absolute immunity for plaintiff's suit for damages.

Even if defendants were not entitled to absolute immunity for their actions, we believe that defendants are at least entitled to qualified immunity.[7] Under *Harlow v.*

---

7. There is some question as to whether or not we should consider the qualified immunity defense since defendants pleaded only absolute immunity. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980) requires that qualified immunity be specifically pleaded as an affirmative defense. The subjective "good faith" element of qualified immunity, however, was essentially eliminated in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Upon a motion for summary judgment a court need now determine only the objective

*Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) a government official performing a discretionary function is generally shielded from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Because no court, to our knowledge, has ever delineated the timing requirements imposed by the due process clause in a situation such as this, the Board members could not reasonably have been expected to know that their acts violated plaintiff's rights, if in fact they did (which we doubt). We are aware of no clearly established due process rights which required the Board to act more quickly than it did, no decision which clearly states that a sixty day or even a ninety day appeal process in a situation such as this violates due process. Where there has been no violation of a clearly established right, defendants are entitled to qualified immunity and plaintiff's claim for damages must be dismissed.

For the reasons stated above, it is hereby ORDERED that: Plaintiff's motion for summary judgment is denied; the "Third" (equal protection) and "Fifth" (negligence) claims contained in the Complaint are dismissed for lack of subject matter jurisdiction; defendant's motion for summary judgment is granted as to all of plaintiff's remaining claims; judgment shall be entered for defendants thereon. No costs.

reasonableness of an official's conduct as measured by law clearly established at the time of the alleged action. Since a form of official immunity has been pleaded and since the qualified immunity defense no longer hinges on the presentation by defendants of evidence of good faith, there is little reason in cases such as this for a court to strictly apply Fed.R.Civ.P. 8(c). *But see Espanola Way Corp. v. Myerson,* 690 F.2d 827, 830 (11th Cir.1982).