**Evanna POWELL, Plaintiff,**

v.

**Anthony NIGRO, et al., Defendants.**

**Civ. A. No. 81–2622.**

United States District Court, District of Columbia.

Jan. 16, 1985.

Evanna Powell, pro se.

Lloyd Moore, Washington, D.C., for defendants.

### MEMORANDUM

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff Evanna Powell, unsuccessful in her attempt to pass the District of Columbia bar examination, brings this action *pro se* against several past and present members of the Committee on Admissions to the Bar of the District of Columbia Court of Appeals. In prior proceedings, after remand from the Court of Appeals, 711 F.2d 420, remanding 543 F.Supp. 1044, for reconsideration in light of *District of Co-*

*lumbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), this Court dismissed those counts of the complaint dealing with plaintiff's individual, particularized claims as being premature. *Powell v. Nigro*, No. 81–2622 (D.D.C. Nov. 14, 1983). In the remaining counts, ¶¶ 10a–10b, 13–16, and 17a–20b, plaintiff makes a broad challenge to the constitutionality of the bar examination, essentially alleging that defendants' construction of the bar examination violated her rights under the equal protection and due process of law components of the Fifth Amendment. The action is before the Court on defendants' motion to dismiss on the ground of immunity and a request, pursuant to Fed.R.Civ.P. 25(d)(2), to substitute the Committee on Admissions as the party defendant. For the reasons stated below, the motion is granted in part and denied in part.

Plaintiff's complaint is predicated on a variety of allegations. She asserts that the bar examination was not "validated," in general or pursuant to court-established criteria for test validation. Plaintiff contends the examination question asking each applicant about the number of unsuccessful examinations was used to prejudge an applicant's proficiency in law. Similarly, plaintiff alleges that the examination numbers assigned bar applicants were used to "predetermine" examination scores. Plaintiff further asserts that the Committee on Admissions had no "ascertainable standard" in grading the bar examination or in establishing the passing score when combining the essay and multistate components of the examination. In addition to her constitutional claims, plaintiff relies on these same allegations to make out a violation of 42 U.S.C. § 1983.[1]

■ A motion to dismiss may be granted only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80

---

1. The following discussion relating to judicial immunity applies equally to § 1983 claims.

*Pierson v. Ray*, 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967).

(1957) (footnote omitted), *quoted in Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 474 (1974). The material allegations of the complaint are presumed to be true for purposes of this motion.

 It is well settled that a judge is entitled to absolute immunity for all acts committed within his judicial jurisdiction, even grave procedural errors. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). This immunity attaches regardless of corruption or maliciousness. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). The purpose of absolute immunity is to promote spirited public service and to prevent fearful decisionmaking that would result if the attention of judges was diverted away from public trust and toward personal liability. Judicial immunity benefits the public interest by ensuring judicial independence and by preventing judges from being subjected to vexatious actions. For these same policy reasons, independence and freedom from obstructive and harassing litigation, absolute immunity has been made applicable to certain other quasi-judicial officials when their activities are integrally related to the judicial process and involve the exercise of discretion comparable to a judge. *See, e.g., Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecutors initiating and pursuing a criminal prosecution); *Simons v. Bellinger*, 643 F.2d 774 (D.C.Cir.1980) (members of committee appointed by Court of Appeals to monitor unauthorized practice of law); *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir.1980) (partition commissioners effecting a divorce settlement); *Stift v. Lynch*, 267 F.2d 237 (7th Cir.1959) (justices of the peace).

 Absolute immunity, however, will be "extended no further than its justification would warrant." *Harlow v. Fitzgerald*, 457 U.S. 800, 811, 102 S.Ct. 2727, 2735, 73 L.Ed.2d 396 (1982). When assessing whether absolute immunity should be afforded a quasi-judicial official, a court should focus on the official's function at issue and consider three public policy factors: 1) the "functional comparability" of his judgments to those of a judge; 2) the nature of the controversy in which he participated; and 3) the adequacy of safeguards to control unconstitutional conduct. *Simons*, 643 F.2d at 778; *Rosenfield v. Clark*, 586 F.Supp. 1332, 1339 (D.Vt.1984). If the function involves an exercise of judge-like discretion, absolute immunity should be afforded; for all other acts, the individual members should enjoy only qualified immunity. *Kane v. Yung Won Han*, 550 F.Supp. 120, 123 (E.D.N.Y.1982).

Congress has vested in the District of Columbia Court of Appeals the authority and responsibility for determining the method of admitting attorneys to the practice of law in the District of Columbia. D.C.Code § 11–2501 (1981). The Court of Appeals has established that admission to the bar requires the successful completion of a two-part examination, an essay portion and the multistate examination. D.C. App.R. 46 I(b)(8)(i); 46(8)(i).[2] The Court of Appeals has further prescribed the areas of law on which the applicants are to be examined in the essay portion and has set a scaled passing score of 133 for the essay component and a separate scaled passing score of 266 for the combined essay and multistate examination. D.C.App.R. 46 I(b)(8)(v), (b)(10)(i); 46(8)(v), b(10)(i).

Both portions of the examination are administered by the court-appointed Committee on Admissions (Committee) which is made up of seven members appointed for a term of three years. D.C.App.R. 46 I(a); 46(a). The Committee has the additional responsibilities of preparing and grading the essay portion of the examination. D.C. App.R. 46 I(b)(8)(vi); 46(b)(8)(vi). The Committee certifies applicants to the court for admission to the bar, a function within the

---

**2.** For convenience sake, the Court has provided citations both to the Rules of the D.C. Court of Appeals in operation at the time the complaint arose and to the new rules which went into effect on January 1, 1985. The applicable text of the rules remains unchanged.

exclusive control of the D.C. Court of Appeals. *Kennedy v. Educational Testing Service, Inc.*, 393 A.2d 523, 525 (D.C.App. 1978).

■ It is well settled that acts of a state's highest court in deciding matters pertaining to admission to the bar are judicial acts. *In re Summers*, 325 U.S. 561, 565 n. 6, 65 S.Ct. 1307, 1310 n. 6, 89 L.Ed. 1795 (1945); *Brown v. Bd. of Bar Examiners of State of Nevada*, 623 F.2d 605, 610 (9th Cir.1980); *Richardson v. McFadden*, 563 F.2d 1130, 1132 (4th Cir.1977) (Hall, J., concurring), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978); *Louis v. Supreme Court of Nevada*, 490 F.Supp. 1174, 1182 (D.Nev.1980); *Woodward v. Virginia Bd. of Bar Examiners*, 454 F.Supp. 4, 6 (E.D.Va.1978), *aff'd* 598 F.2d 1345 (4th Cir.1979); *Brown v. Supreme Ct. of Va.*, 359 F.Supp. 549, 554 (E.D.Va.) (three judge court), *aff'd* 414 U.S. 1034, 94 S.Ct. 534, 38 L.Ed.2d 327 (1973); *Keenan v. Bd. of Law Examiners of State of N.C.*, 317 F.Supp. 1350, 1355 n. 5 (E.D.N.C.1970). In administering the District of Columbia bar examination and judging the fitness of applicants to practice law, the individual committee members perform a judicial function on behalf of the District of Columbia Court of Appeals. *Richardson*, 563 F.2d at 1132 (Hall, J. concurring); *Woodward*, 454 F.Supp. at 6.

While indeed performing a judicial function, the Committee members are entitled to absolute immunity for those acts where they exercise judge-like discretion, not when they perform a purely ministerial act. A close look at each of plaintiff's allegations reveals that all but one relate to the discretionary decisions arising from that portion of the judicial function of bar admissions delegated to the Committee by the Court of Appeals. Certainly the Committee members exercise judge-like discretion in both composing and grading the examination questions. (¶¶ 17a–18 of the complaint). Similarly, the Committee exercises the same discretion in choosing to ask applicants questions pertaining to previous attempts at passing the bar examination.

(¶¶ 13, 20a, 20b of the complaint). Likewise, any issue of validation of the examination would involve a discretionary function delegated to the Committee by the Court of Appeals (¶¶ 10a, 10b of the complaint). As these allegations refer to discretionary acts delegated to the Committee, the defendants are entitled to share in the judge's absolute immunity.

Plaintiff, in addition, alleges that the Committee members have no "ascertainable standard" for determining the passing score when combining the essay and multistate components of the examination or for determining the value to be given prior multistate examination scores used in combination with subsequent essay results (¶¶ 15, 16 of the complaint). An ascertainable standard, however, does exist, as provided by the D.C. Court of Appeals, and the individual Committee members are entitled to immunity in applying the standard. The D.C. Court of Appeals, in an exercise of its discretion, has set the scale scores needed to pass the bar examination. D.C.App.R. 46 I(b)(10); 46(b)(10). That same court has established both that "essay scores on each examination will be converted to scale scores using the equi-percentile method," D.C.App.R. 46 I(b)(9); 46(b)(9), and the necessary criteria for using a prior multistate scale score in conjunction with a subsequent essay score. D.C.App.R. 46 I(b)(10)(ii)(B); 46(10)(ii)(B). The individual Committee members cannot be held liable for money damages when performing their delegated duties in conformance with directives from the D.C. Court of Appeals. As plaintiff has made no allegations that defendants went beyond the established rules, the individual Committee members are entitled to absolute immunity as to ¶¶ 15 and 16 of the complaint.

■ Plaintiff's allegation that the examination numbers assigned to applicants were used to predetermine test scores (¶¶ 14, 19 of the complaint) involves no exercise of discretion by the Committee members, and as such, the defendants are only entitled to qualified immunity. *Harlow*, 457 U.S. at 811, 102 S.Ct. at 2735.

The assigning of numbers is purely a ministerial task, not involving any function similar to that of a judge. Thus, defendants are at most entitled to qualified immunity if their acts were performed in good faith. It would be premature for the Court to rule at this time on whether the defendants are protected by qualified immunity as "the scope of that immunity will necessarily be related to facts as yet not established either by affidavits, admissions, or a trial record." *Scheuer*, 416 U.S. at 243, 94 S.Ct. at 1689. The allegations in ¶¶ 14 and 19 remain viable against the individual defendants.

There can be little question that disgruntled applicants unhappy with their failing scores would institute civil suits challenging the accuracy of the Committee members administering and grading of the bar examination. The threat of such litigation and time loss defending such actions would impair the members' judgment. The intense nature of administering the bar examination and the likelihood of harassing litigation certainly supports granting the Committee members absolute immunity as to actions involving judge-like discretion.

Granting absolute immunity to the Committee members would not allow for widespread abuse in the administration of the bar examination. For applicants who do not pass the bar examination, the Committee provides its post examination review procedure. Under the review procedure,

> [e]ach unsuccessful applicant is notified of his score on each essay question, his "raw score" for each section of the [multistate Bar Examination], and his combined score. Upon request, the applicant may meet with the Secretary to the Committee for a review of his essay paper and the questions as framed by the examiners and the examiners' comments with respect to each question. An unsuccessful applicant may submit within a fixed time, *without identifying himself,* a petition for regrading to each examiner he wishes with supporting reasons. The Secretary must submit to each examiner so petitioned, the petition, the petitioner's examination book and the examiner's questions and comments with respect to such questions. The unsuccessful applicant is notified by the Secretary of the examiner's ultimate disposition of his petition for regrading and the applicant may obtain, upon request, finally a review of the regrading petition and the examiner's disposition thereof by *two other members* of the Committee.

*Harper v. District of Columbia Committee on Admissions,* 375 A.2d 25, 26–27 (D.C.App.1977) (emphasis in the original).

Although the District of Columbia has no statutorily established procedure for petitioning the Court of Appeals for review of a final determination of the Committee denying certification that an applicant has passed the bar examination, the Court of Appeals nevertheless does accept and consider petitions for review. *Kennedy*, 393 A.2d at 525 (citing as an example *Harper v. District of Columbia Committee on Admissions,* 375 A.2d 25). Thus plaintiff would have the opportunity to point out the inaccuracies in the bar admissions without the need to bring a civil damage suit against the individual Committee members.

█ In addition to claims for money damages, plaintiff seeks certain equitable remedies which include a declaratory judgment stating that the Committee members violated her constitutional rights and an injunction enjoining the members from using grading techniques which continue to violate her constitutional rights. Plaintiff also requests that she be admitted to the District of Columbia bar and granted a licence to practice law in the District of Columbia. A finding of absolute immunity itself would not preclude plaintiff from bringing her equitable claims against the individual members. *Pulliam v. Allen,* — U.S. ——, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). It is clear, however, by the nature of the requested relief, that plaintiff is suing defendants in their official capacity, and pursuant to Fed.R.Civ.P. 25(d)(2), the Committee on Admissions should be inserted as the defendant to these equitable claims. The Court does not address at this

time whether it is within the Committee's power as a whole to provide the requested relief, though the Court does question whether the Committee is in a position to provide plaintiff with the relief she desires. *See Feldman v. State Board of Law Examiners,* 438 F.2d 699, 702 (8th Cir.1971) (The Committee "does not itself admit applicants to the bar, ... but merely makes recommendations ... the court may or may not elect to follow."). *Accord, Kennedy,* 393 A.2d at 525.

Defendants request that the Court extend the protective order of January 17, 1984 to include plaintiff's interrogatories nos. 7–14. *Powell v. Nigro,* CA No. 81–2622 (D.D.C. Jan. 17, 1984). In that January 17 order, the Court considered defendants' motion for a protective order to plaintiff's first set of interrogatories, granting the request in part but ordering defendants to answer interrogatories nos. 7–14. While the individual members are entitled to absolute immunity as to certain of the claims for money damages, enough of the complaint remains viable against the individual members and the Committee itself to lay a factual predicate for applying the Court's reasoning in the earlier order to the request presently before it. For the same reasons used there, a balancing between "the broad (but not unbounded) scope of discovery and the strictures of *Feldman,*" *Powell v. Nigro,* slip op. at 3, the request for an extension of the protective order is denied, and defendants are required to answer interrogatories nos. 7–14.

Except for those allegations relating to the assigning of test numbers to the bar applicants contained in ¶¶ 14 and 19 of the complaint, the individual Committee members are entitled to absolute immunity from any claims for money damages. As to the allegations in ¶¶ 14 and 19, plaintiff has a viable cause of action against the individual members, subject only to a showing of qualified immunity. Though the request for equitable relief is not precluded by absolute immunity, the Committee on Admissions should be made the party defendant to those claims, dismissing the individual Committee members as parties to the claims for equitable relief. The requested extension of the January 17 protective order is denied and defendants must respond to interrogatories nos. 7–14.

Accordingly, defendants' motion to dismiss is granted in part and denied in part.

An appropriate order follows.