**In re KELTON MOTORS, INC., Debtor.**

**Bankruptcy No. 88–00255.**

United States Bankruptcy Court,
D. Vermont.

Dec. 8, 1989.

J. Meyers, White River Junction, Vt., for Kelton Motors, Inc. as debtor-in-possession (DIP).

M. Teachout, and D. Moore, Teachout, Brooks, Moore & McNally, Norwich, Vt., J. Bodoff, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for United Sav. Acceptance Corp. and Dartmouth Banking Co. (creditors).

## MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY ATTORNEY FOR DEBTOR–IN–POSSESSION

FRANCIS G. CONRAD, Bankruptcy Judge.

 Creditors move[1] to disqualify DIP's counsel because his "Rule 2016(b)" statement disclosed he had received attorney fees for services rendered prior to

DIP's subsequent conversion to a debtor under Chapter 7, 11 U.S.C. §§ 101, *et seq.*, from the DIP's sole shareholder, officer, and spouse. Creditors urge us to adopt a per se rule to forbid this type of arrangement because it creates a presumption of a conflict of interest between DIP, DIP's counsel, and DIP's principals. In an appropriate case there may be merit to Creditors' position. We decline their request in this instance because this arrangement was disclosed to the Court, the corporate debtor consented to it, and, it was understood by DIP's principal that counsel's duty of undivided loyalty was owed only to the DIP. Moreover, the adoption of a *per se* rule would effectively deprive future small corporate bankrupt debtors from obtaining competent counsel of choice.

On October 27, 1988, Creditors and others filed an involuntary Chapter 7 petition against Kelton Motors, Inc. (Kelton). On December 21, 1988, Attorney Meyers (Meyers) entered his appearance on behalf of Kelton and answered the involuntary petition. After several rounds of legal maneuvering, Kelton sought leave to withdraw its answer to the involuntary petition and consented to the entry of an Order of Relief. On motion of Kelton, the case was converted to one under Chapter 11 of Title 11, United States Code. 11 U.S.C. § 706(a).

On February 21, 1988, Mr. Kelton, DIP's president, officer, and sole shareholder, filed an application to employ Meyers as the DIP's attorney, under a general retainer. We granted the application.

On April 17, 1989, Meyers filed his Rule 2016(b) statement and represented:

Prior to the filing of this statement, the debtor has not paid any fees toward the undersigned [Meyers]. However, Carl E. Kelton, Sr. and Shirley Kelton, personally, have paid the sum of $22,500 for services rendered to date.

*Id.*, page 1 (brackets supplied). Shortly thereafter, Creditors filed a motion to disqualify Meyers as DIP's counsel. On May

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the general reference to this Court. It is a 28 U.S.C. § 157(b)(2)(A) core matter. This Memorandum of Decision constitutes findings of facts and conclusions of law under F.R.Civ.P. 52 as made applicable by Rules of Practice and Procedure in Bankruptcy Rule 7052.

31, 1989, we granted a motion filed by DIP to convert to a case under Chapter 7. After a June 6, 1989 hearing on the Creditors' motion to disqualify Meyers, we took the matter under advisement.

We have not overlooked the possibility that DIP's conversion to Chapter 7 may have mooted this decision. Despite the mootness problem posed by DIP's Chapter 7 conversion, we believe the ethical and legal ramifications of Meyers' representation of the DIP remain very much alive and are subject to our continuous scrutiny. Because we believed this issue may surface again in this jurisdiction, and could escape a judicial ruling because of case conversion, its importance to the Vermont bankruptcy bar, and with the consent of all parties, Creditors agreed not to withdraw their objection to Meyers' representation of the DIP.

Creditors concede that Meyers fully disclosed the fact that he was paid by DIP's principals. Creditors also concede that "we're making no claim that Mr. Meyers has not (sic) done anything wrong or that he has in any way acted improperly." June 6, 1989 transcript, page 4–5. Creditors claim, however, that Meyers' acceptance of payment from DIP's principal created a relationship warranting Meyers' disqualification as DIP's counsel on the basis of potential, if not actual, conflict and divided loyalty under the applicable provisions of the Bankruptcy Code and State Code of Professional Responsibility.

> Mr. Meyers holds or represents an interest adverse to the estate and/or is not a disinterested person in that the fees for his services have been paid by the president and sole shareholder of the [DIP] and his wife. Such payment puts into question the ability of Mr. Meyers to exercise independent judgment on behalf of the [DIP] and to act for the interests of the [DIP] and the estate rather than the interests of [Mr. Kelton] and the Kelton family.

Creditors' "Motion To Disqualify [Meyers] As Counsel For [DIP]," page 2 (brackets supplied). June 6, 1989 transcript, pages 10–11.

Creditors proffer the following paraphrased facts in support of their disqualification motion that Meyers "cannot possess the independence of thought required of counsel for a debtor-in-possession" which is needed to investigate the dealings of Mr. Kelton, the Kelton family, DIP, and related Kelton family businesses:

> 1. Mr. Kelton and his family are shareholders of at least eight other Vermont corporations. Millions of dollars have circulated among and between these corporations. Issues of fraudulent conveyances, preferential transfers, and substantive consolidation may arise in this case;
>
> 2. Mr. Kelton arranged loans for friends and relative from various financial institutions for fictitious sales of vehicles. Mr. Kelton is under a grand jury investigation and during a State Court deposition, claimed the privilege of self incrimination; and
>
> 3. Meyers attended a pre-bankruptcy State Court deposition of the principal's spouse and appeared to represent the spouse.

*Id.,* pages 2–4; Creditors' "Memorandum of Law In Support of Motion To Disqualify [Meyers] as Counsel For [DIP]," pages 1–2; June 6, 1989 transcript, pages 5–8.

Creditors sum their objection:

> ... in a circumstance in which Mr. Meyers as counsel for the Debtor Corporation is obliged to investigate the facts and circumstances involving possible preferences, fraudulent conveyances, improper transfers between the corporations and so forth, you can imagine the conversation in which Mr. Meyers asks Mr. Kelton for information; says: It's my duty to find this information; Mr. Kelton says: It's your duty? Who paid you anyway? And Mr. Meyers is unable to complete the conversation by saying: I was paid by the Corporation and it's my duty to the Corporation and to the Bankruptcy Court to investigate these matters on behalf of the Creditors in the Bankruptcy Court.

June 6, 1989 transcript, pages 10–11.

Meyers objects to a *per se* rule that prohibits a debtor's principal from ever

paying a debtor-in-possession's attorney fees. Specifically, Meyers claims that he does not have a material interest that is adverse to the estate and that he is a "disinterested person" within the meaning of 11 U.S.C. §§ 101(13)(E) and 327(a), *infra*. He acknowledges § 327's requirement of a "disinterested person" holding no "interest adverse to the estate" governs his qualification as DIP's attorney.

Meyers flouts the Creditors' objections. He informs us that DIP's principal has retained independent counsel. Meyers' presence at Ms. Kelton's State Court deposition was at the consent of the independent counsel who was unable to attend. Moreover, Meyers was present not as counsel for the deponent, but as DIP's counsel. Meyers wanted to control unwarranted disclosures of corporate information to Creditors because of a pending lawsuit by DIP against Creditors. Meyers' "Memorandum in Opposition To Motion To Disqualify [Meyers] As Counsel for [DIP]" ("Meyers' Memorandum"), pages 1–2; June 6, 1989 transcript, pages 15–16.

Meyers represents:

I'll tell you the conversation as you know that I've had with my clients in all of these cases. You can pay me but my loyalty is to this Debtor, this Corporation. If there's a conflict of interest between representing you and the Debtor, so long, Mr. Kelton ... so long, whoever it is. It's goodbye.

I represent the Debtor, period. If you want me to represent the Debtor you got to pay me, second period. What would be the difference if he [Mr. Kelton] lent the money to the Corporation and then they (sic) pay me?

June 6, 1989 transcript, pages 12–13.

Meyers distinguishes cases cited by Creditors which appear to announce a *per se* rule to prohibit the arrangement under review because of: the consent and disclosure to his client; the understanding that Meyers' loyalty was only to the DIP; the lack of any reimbursement arrangement; the lack of actual conflict; the absence of simultaneous representation of a bankruptcy debtor and a principal; no services were

rendered to the principal; and, the presence of independent counsel on behalf of the principal. Meyers' Memorandum, pages 2–6.

Lastly, Meyers urges us not to adopt a *per se* rule because:

Inevitably, many small corporations faced with the type of financial difficulties plaguing average Chapter 11 debtors, are not in a position to easily afford to retain competent bankruptcy counsel out of their already scarce operating funds. The amount of legal work required to undertake such reorganization cases requires a substantial enough retainer to permit an attorney to undertake the responsibility of handling such a case. If the payment of a retainer by other than the corporate debtor itself is completely prohibited, many potential corporate debtors whose businesses may be saved by a reorganization proceeding will be unable to retain counsel and the relief available under the Bankruptcy Code will in effect be denied them.

*Id.*, pages 6–7. June 6, 1989 transcript, page 15.

The issues before us is whether § 327 and/or applicable State ethical rules require us to adopt a *per se* rule prohibiting a Chapter 11 debtor-in-possession's employment of an attorney where it is disclosed that his fees had been paid by the DIP's insider/principal?

11 U.S.C. § 1107, **Rights, powers, and duties of debtor in possession,** provides in pertinent part:

(a) Subject to any limitations ... a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

(b) Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or

representation of the debtor before the commencement of the case.

*Id.*

Section 1107(a) places the debtor-in-possession in the shoes of the trustee in every way, subject to such other limitations as the Court prescribes, see, H.R.Rep. No. 595, 95th Cong., 1st Sess. 404 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, and makes § 327(a) applicable to attorneys appointed to assist Chapter 11 debtors. *In re Martin,* 817 F.2d 175, 177 n. 1 (1st Cir.1987); *Fanelli v. Hensley, (Matter of Triangle Chemicals, Inc.),* 697 F.2d 1280, 1283–84 (5th Cir.1983).

11 U.S.C. § 327(a), (c) and (e), **Employment of professional persons,** provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(c) In a case under Chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

*Id.*

Section 327(a)'s use of the term "disinterested person" is defined by 11 U.S.C. § 101(13) which provides in pertinent part:

(13) "disinterested person" means person that—

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason.

11 U.S.C. § 101(13)(E). An "interest adverse" is not defined in the Bankruptcy Code.

11 U.S.C. § 328(c), **Limitation on compensation of professional persons,** provides:

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 330(a), **Compensation of officers,** provides:

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

11 U.S.C. § 329, **Debtor's transactions with attorneys,** provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive to—

(1) the estate if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

*Id.*

Applicable Rules of Practice and Procedure in Bankruptcy include:

Rule 2014(a),[2] **Employment of Professional Persons,** which provides in pertinent part:

(a) **Application for and Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee ... stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for

compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

*Id.* (1987 ed.).

Rule 2016, **Compensation for Services Rendered and Reimbursement of Expenses,** which provides:

(a) **Application for compensation and reimbursement.** An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation to be paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any agreement by the applicant for the sharing of compensation as a member or regular associate of a firm of lawyers or accountants shall not be required. The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or

---

**2.** This rule is a subject of the Preliminary Draft of Proposed Amendments to the Bankruptcy Rules. If the amendment is accepted as proposed, it would include persons (entities) employed by a committee of retired employees. This rule, and Rules 2016 & 2017, would also be amended to reflect the U.S. Trustee system.

accountant even though the application is filed by a creditor or other entity.

(b) **Disclosure of compensation paid or promised to attorney for debtor.** Every attorney for a debtor, whether or not the attorney applies for compensation, shall file with the court within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed.

*Id.* (1987 ed.).

Rule 2017, **Examination of Debtor's Transactions with His Attorney,** which provides:

(a) **Payment or Transfer to Attorney Before Commencement of Case.** On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor, to an attorney for services rendered or to be rendered is excessive.

(b) **Payment or Transfer to Attorney After Commencement of Case.** On motion by the debtor or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any other agreement therefor, by the debtor to an attorney after the commencement of a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or

agreement therefor is for services in anyway related to the case.

*Id.*

Several Courts that have examined conflict of interest issues under the Bankruptcy Code have not only analyzed such issues with respect to the Bankruptcy Code, but also with respect to the ethical codes of their respective bars. *See e.g., In re Roberts,* 46 B.R. 815, 833–37 (Bkrtcy.D.Utah 1985), *rev'd in part,* 75 B.R. 402 (D.Utah 1987); *In re McKinney Ranch Associates,* 62 B.R. 249, 254 (Bkrtcy.C.D.Cal.1986); *In re GHR Energy Corp.,* 60 B.R. 52, 61–66 (Bkrtcy.S.D.Tex.1985); *Matter of Park,* 54 B.R. 326, 329 (Bkrtcy.S.D.N.Y.1985) ("Ethical violations are indeed relevant to a fee determination."); *In re WPMK, Inc.,* 42 B.R. 157, 161–62 (Bkrtcy.D.Hawaii 1984); *In re Chou–Chen Chemicals, Inc.,* 10 B.C.D. 1103, 31 B.R. 842, 851, 8 CBC.2d 1240 (Bkrtcy.W.D.Ky.1983); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 335 (E.D.Pa.1982); *In re Sambo's Restaurants, Inc.,* 20 B.R. 295, 299 (Bkrtcy.C.D.Cal.1982); *Hassett v. McColley (In re O.P.M. Leasing Services, Inc.),* 8 B.C.D. 841, 16 B.R. 932, 940, 5 C.B.C.2d 1503 (Bkrtcy.S.D.N.Y.1982). For cases which have not discussed conflict of interest in terms of State codes of professional conduct, but only in respect to the Bankruptcy Code, *see, e.g., In re N.S. Garrott & Sons,* 63 B.R. 189 (Bkrtcy.E.D.Ark.1986); *In re Hoffman,* 53 B.R. 564 (Bkrtcy.W.D.Ark. 1985); *In re Watson Seafood & Poultry Co., Inc.,* 40 B.R. 436 (Bkrtcy.E.D.N.C. 1984); *In re B.E.T. Genetics, Inc.,* 11 B.C.D. 845, 35 B.R. 269, 9 C.B.C.2d 1346 (Bkrtcy.E.D.Cal.1983) (recognizes, but does not discuss, the Code of Professional Responsibility).

The United States Constitution, Art. I, Section 1, provides:

All legislative powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.

The authority to adopt rules relating to the admission to practice before the Federal Courts was delegated early by Congress to the Federal Courts in Section 35 of the

Judiciary Act of 1789, Act of September 24, 1789, Ch. 20, 1 Stat. 73, 92; now codified as 28 U.S.C. § 1654, **Appearance personally or by counsel,** which provides:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

*Id.*

In addition to 28 U.S.C. § 1654, 28 U.S.C. § 2071, **Rule-making power generally,** provides:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court.

*Id.*

Congress delegated to the United States Supreme Court the power to proscribe rules of procedure for the lower Federal Courts which now appears in 28 U.S.C. § 2072, **Rules of Procedure and Evidence, Power to Prescribe,** as follows:

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States District Courts (including proceedings before magistrates thereof) and Courts of Appeal.

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

Federal Rules of Civil Procedure (F.R. Civ.P.) Rule 83, **Rules by District Courts,** was promulgated by the United States Supreme Court pursuant to its rule-making authority and provides:

Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules. A local rule so adopted shall take effect

upon the date specified by the district court and shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public. In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.

*Id.,* (amended April 29, 1985, eff. Aug. 1, 1985).

Thus, 28 U.S.C. §§ 1654, 2071, 2072, and F.R.Civ.P. Rule 83 permit a Federal District Court to regulate the conduct of attorneys who practice before it. *Brown v. McGarr,* 774 F.2d 777, 782 (7th Cir.1985), *rehearing and rehearing en banc denied,* October 31, 1985.

Congress also enacted 28 U.S.C. § 2075, **Bankruptcy Rules,** which provide:

The Supreme Court shall have the power to prescribe by general rules, the forms and process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

Such rules shall not abridge, enlarge or modify any substantive right.

Such rules shall not take effect until they have been reported to Congress by the Chief Justice at or after the beginning of a regular session thereof but not later than the first day of May, and until the expiration of ninety days after they have been thus reported.

*Id.*

Under the Congressional delegation of 28 U.S.C. § 2075, the United States Supreme Court promulgated Rules of Practice and Procedure in Bankruptcy Rule 9029, **Local Bankruptcy Rules.** This adaptation of F.R.Civ.P. 83 reads:

Each district court by action of a majority of the judges thereof may make and amend rules governing practice and pro-

cedure in all cases and proceedings within the district court's bankruptcy jurisdiction which are not inconsistent with these rules. Rule 83 F.R.Civ.P. governs the procedure for making local rules. A district court may authorize the bankruptcy judge of the district, subject to any limitation or condition it may prescribe and the requirements of 83 F.R.Civ.P., to make rules of practice and procedure not inconsistent with these rules. In all cases not provided for by rule, the court may regulate its practice in any manner not inconsistent with these rules or those of the district in which the court acts.

*Id.*

Part V, Local Rules of Practice and Procedure In Bankruptcy For the District of Vermont, Effective May 1, 1988, provides in pertinent part:

> Local Rules for the District Court pertaining to Admission and Discipline of Attorneys ... are specifically incorporated by reference in these Local Bankruptcy Rules.

VLB Rule 1001–B.

Rule No. 1(D)(N)(b) of the United States District Court for the District of Vermont Local Rules of Procedure, effective June 1, 1985, adopts the professional conduct rules set by Vermont's State Supreme Court:

> (b) Acts or omissions by an attorney admitted to practice before this court, individually or in concert with any other person or persons, which violate the Code of Professional Responsibility or Rules of Professional Conduct adopted by this court, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. The Code of Professional Responsibility or Rules of Professional Conduct adopted by this court is the Code of Professional Responsibility or Rules of Professional Conduct adopted by the highest court of the state in which this court sits, as amended from time to time by that state court, except as otherwise provided by specific rule of this court after considera-tion of comments by representatives of Bar Associations within the state.

*Id.*

In addition to the express authority delegated by Congress to regulate attorney practice, we possess an inherent power to regulate the conduct of attorneys and to disbar attorneys from practicing before us. *See, Randall v. Brigham,* 74 U.S. (7 WALL.) 523, 540, 19 L.Ed. 285 (1869); *Hull v. Celanese Corporation,* 513 F.2d 568, 571 (2d Cir.1975) ("The district court bears responsibility for the supervision of the members of its bar.") Moreover, a Federal Court has a duty to disqualify counsel from participating in a particular case if there is such a conflict of interest or other ethical impropriety which may prejudice his adversary or impugn the public perception of the judicial system.

> The district court was incorrect in its view that the various bar associations constitute the only proper forum for investigation of a claim of professional misconduct. On the contrary, the courts have not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct prejudicial to his adversaries.

*Cermaco, Inc. v. Lee Pharmaceuticals,* 510 F.2d 268, 270–71 (2d.Cir.1975). *See, United States v. Gopman (In re Gopman),* 531 F.2d 262 (5th Cir.1976). Our responsibility requires that we maintain public confidence in the legal profession. *See, Richardson v. Hamilton International Corporation,* 469 F.2d 1382, 1385 (3d.Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

Disqualification motions or conflict of interest allegations similar to those involved here are the result of an attorney's ethical duty to inform the Court of the existence of possible ethical violations. *See, Gopman,* 531 F.2d at 262, 265. Such matters speak to the equitable powers of a Court and the parties must therefore act with diligence after the matter is brought to their attention. *Marco v. Dulles,* 169 F.Supp. 622, 632 (S.D.N.Y.1959).

Procedural safeguards must be adhered to for the protection of both attorneys and litigants. As the Seventh Circuit observed:

> The right to rebut allegations of impropriety is necessary because of the immediate and often irreparable ramifications as to both client and counsel alike that a disqualification order carries with it. I believe counsel and, in this instance, the law firm should not only be allowed to protect their relationship with their present client but also their good name and reputation for high ethical standards. After all, an attorney's and/or a law firm's most valuable asset is their professional reputation for competence, and above all honesty and integrity, which should not be jeopardized in a summary type of disqualification proceeding of this nature. As court proceedings are matters of public record, a news media report concerning a summary disqualification order, based on a scant record of this type, can do irreparable harm to an attorney's or law firm's professional reputation. We must recognize that the great majority of lawyers, as officers of the court, do conduct themselves well within the bounds of the Code of Professional Responsibility.
>
> Moreover ... disqualification of an attorney may also adversely affect the client as disqualification deprives the individual of the representation of the attorney of his choice and "it may also be difficult, if not impossible, for an attorney to master 'the nuances of the legal and factual matters' late in the litigation of a complex case."

*Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1275 (7th Cir.1983) (Coffey, J., dissenting) (citations omitted).

■ In dealing with a disqualification motion a judge must balance several competing interests such as: a party's right to counsel of his own choice, *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 564–65 (2d Cir.1973); the needs of efficient judicial administration against the potential advantage of immediate measures, *Board of Education of the City of New York v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979); the lawyer's duty to maintain the confidences of his clients, *Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir.1983); and, the client's expectation that a lawyer will exercise independent judgment on its behalf. See, *Trone v. Smith,* 621 F.2d 994 (9th Cir.1980).

■ While weighing the above concerns, we are mindful that there is a high standard of proof in a disqualification proceeding. *Evans v. Artek Systems Corp., supra,* 715 F.2d at 794. But mere hypothetical conflicts do not meet the heavy burden of proof to warrant disqualification of DIP's attorney. *In re Stamford Color Photo, Inc.,* 19 B.C.D. 77, 98 B.R. 135, 137 (Bkrtcy.Conn.1989). Nor does a violation of professional ethics result in automatic disqualification of counsel. *See, W.T. Grant & Co. v. Haines,* 531 F.2d 671, 677 (2d Cir.1976).

■ We may raise sua sponte any issues involving conflict of interest, *see, Cohen & Thiros v. Keen Enterprises,* 44 B.R. 570, 574–75 (N.D.Ind.1984), but we have no duty to search the file to ferret out information of actual or potential adverse interests or other evidence of noncompliance with 11 U.S.C. § 327. *In re Automend, Inc.,* 17 B.C.D. 798, 85 B.R. 173, 179, 18 C.B.C.2d 857 (Bkrtcy.N.D.Ga.1988). In *Automend,* an attorney non-disclosure case, the Court rejected the contention that adequate disclosure was made through the debtor's schedules and § 341 meeting. Instead, it imposed an affirmative duty to fully disclose to the Court all pertinent details about the representation. Once the details are disclosed, it is up to the Court to assess their impact because it is too much to assume that even the best of us are able to ignore the subconscious tug-a-war inherent in conflicts. "[Ethics] are an acquirement—like music, like a foreign language, like piety, like poker, paralysis—no man is born with them." Mark Twain on his seventieth birthday (1910).

■ A Court approved attorney hired by a DIP or debtor is a fiduciary to the Court. *Matter of Arlan's Dept. Stores, Inc.,* 615 F.2d 925, 932 (2d Cir.1979); *In re The Crouse Group, Inc.,* 75 B.R. 553, 558

(Bkrtcy.E.D.Pa.1987) ("employee of a DIP is a fiduciary vis-a-vis not only the DIP, but also its creditors."). A professional person's duty to disclose adverse interests to this Court can not be shifted to his opponents simply because they might have had such information and ought to have objected at the time he sought Court approval of his employment compensation. If he is being paid out of the DIP's estate, he has an affirmative duty as a fiduciary to disclose any adverse interest to the Court either at the time our approval of employment is sought or, upon discovery, that enables us to make an independent assessment of the validity of his employment. *See, In re Athos Steel And Aluminum, Inc.*, 15 B.C.D. 455, 69 B.R. 515, 520 (Bkrtcy.E.D. Pa.1987) (Court has authority to review compensation debtor corporation proposed to pay officer under § 327, even though no party in interest had objected); *In re Hooper, Goode Realty*, 60 B.R. 328, 331 (Bkrtcy.S.D.Cal.1986) (Court is vested with authority to review the propriety of salaries paid to DIP's officers under §§ 105 and 1107(a)).

The rules and regulations promulgated by the Vermont Supreme Court are incorporated into our District Court's local rules and, thus, aid in our determination of the issue before us.

Vermont's Constitution vests the responsibility for the regulation and discipline of its attorneys with the Vermont Supreme Court:

> The Supreme Court shall have administrative control of all the courts of the state, and disciplinary authority concerning all judicial officers and attorneys at law in the State.

Vermont Constitution, Chapter II, § 30. *In re Harrington*, 134 Vt. 549, 552, 367 A.2d 161 (1976). *Compare, In re Haddad*, 106 Vt. 322, 325–26, 173 A. 103, 104 (1934) ("The Court's inherent power of discipline is not derived from the Constitution, or necessarily, from the statutes of the State.... It has existed from time immemorial.") (citations omitted).

The Vermont legislature enacted this "exclusive" power to regulate the admission of attorneys within its jurisdiction:

> Justices of the Supreme court shall make, adopt and publish and may alter or amend rules regulating the admission of attorneys to the practice of law before the courts of this state.

4 Vt.Stat.Ann. § 901. *In re Haddad, supra*, 106 Vt. at 324, 173 A. 103; *Welch v. Smith*, 486 F.Supp. 153, 154 (D.Vt.1980).

The Vermont Supreme Court's disciplinary jurisdiction over attorneys is governed by Administrative Order No. 9, Permanent Rules Governing Establishment of Professional Conduct Board and its Operation. During its November 1988 term, the Vermont Supreme Court amended Administrative Order No. 9 and declared:

> *PREAMBLE: Authority of the Court.*
>
> The Supreme Court of Vermont declares that it has exclusive responsibility within this state for the structure and administration of lawyer discipline and disability system and that it has inherent power to maintain appropriate standards of professional conduct and to dispose of individual cases of lawyer discipline and disability.

Id., (promulgated January 5, 1989, effective July 1, 1989). Vermont's "Code of Professional Responsibility" (amended effective March 1, 1989), constitutes the "appropriate standards of professional conduct" within the meaning of our District Court's Local Rules.

We do not set forth every conceivably applicable Vermont State canon, disciplinary rule (DR), or ethical consideration (EC) that may be relevant to the matter *sub judice*, rather, we list a few of them:

CANON 5—**A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client**

DR 5–107 **Avoiding Influences by Others Than the Client.**

> (A) Except with the consent of his client after full disclosure, a lawyer shall not:
>
> (1) Accept compensation for his legal services from one other than his client.

(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

EC 5-1 The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

### Interests of Multiple Clients

EC 5-18 A lawyer employed or retained by a corporation or similar entity owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, a lawyer should keep paramount its interests and his professional judgment should not be influence by the personal desires of any person or organization. Occasionally a lawyer for an entity is requested by a stockholder, director, officer, employee, representative, or other person connected with the entity to represent him in an individual capacity; in such case the lawyer may serve the individual only if the lawyer is convinced that differing interests are not present.

### Desires of Third Persons

EC 5-21 The obligation of a lawyer to exercise professional judgment solely on behalf of his client requires that he disregard the desires of others that might impair his free judgment. The desires of a third person will seldom adversely affect a lawyer unless that person is in a position to exert strong economic ... pressures upon the lawyer. These influences are often subtle, and a lawyer must be alert to their existence. A lawyer subjected to outside pressures should make full disclosures of them to his client; and if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client.

EC 5-22 Economic ... pressures by third persons are less likely to impinge upon the independent judgment of a lawyer in a manner in which he is compensated directly by his client and his professional work is exclusively with his client. On the other hand, if a lawyer is compensated from a source other than his client, he may feel a sense of responsibility to someone other than his client. *Id.*

In *Woods v. City National Bank & Trust Co. of Chicago*, 312 U.S. 262, 61 S.Ct 493, 85 L.Ed. 820 (1941), a committee was formed by the not-then trustee to represent the first mortgage bondholder. Two of the members were officers or employees of the underwriter, who was heavily interested in the equity. This fact was not disclosed when the committee selected the bondholder. There were also several allegations concerning alleged misrepresentations by the underwriter. The trustee was later appointed as a successor trustee, on petition, by the committee. Through various actions of the committee, it became, in substance, part of the indenture trustee's reorganization division. Beyond all this, the indenture trustee was also the indenture trustee for neighboring properties and had dealings with them that were attached by the reorganization trustee. Finally, the same firm of attorneys retained by the indenture trustee was also employed by the committee.

The *Woods* Court reversed the Court of Appeals' reversal of the District Court, noting that the District Court's findings of a conflict which warranted a complete disallowance of compensation was "amply supported by the evidence." *Id.*, 312 U.S. at 269, 61 S.Ct. at 497.

*Woods* is often cited as authority for the proposition that when facts revealing a conflict of interest arise, all fees are to be disallowed:

Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Id.,* 312 U.S. at 268, 61 S.Ct. at 497. *See, e.g., Pierson & Gaylen v. Creel & Atwood (Matter of Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1256 (5th Cir.1986); *Hunter Sav. Association v. Baggott Law Offices Co., L.P.A. (In re Georgetown of Kettering, Ltd.),* 750 F.2d 536, 540–41 (6th Cir.1984).

A careful review of Woods and post-Woods decisions, however, leads to an interpretation that Woods does not require a denial of compensation in every case of conflict of interest regardless of the facts. In *Chicago & West Towns Railways v. Friedman,* 230 F.2d 364, 369 (7th Cir.1956), *cert. denied,* 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469 (1956), a law firm represented both a committee of the debtor's bondholders and a potential buyer of the debtor, an historical and actual conflict of interest between a seller and a buyer. The Court of Appeals recognized that the District Court could have disallowed all fees on the authority of Woods, but, in upholding the District Court, held a "less harsh rule" would be followed instead of full forfeiture.

In *Iannotti v. Manufacturers Hanover Trust Company (Matter of New York, New Haven and Hartford Railroad Company),* 567 F.2d 166, 174 (2d.Cir.1977), *cert. denied,* 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977) the Court held:

> *[Woods]* recognizes the inherent discretionary *power* of a reorganization court to disallow compensation for services and expenses on the ground of conflict of interest; but it does not *require* that a reorganization court do so.

*Id.,* (emphasis in original).

*Woods* remanded to the District Court for it to exercise its discretion to determine and allow expenses that benefited the estate despite the presence of an actual conflict:

> The rule disallowing compensation because of conflicting interests may be equally effective to bar recovery of the expenditures made by a claimant subject to conflicting interests. Plainly expenditures are not 'proper' within the meaning of the Act where the claimant cannot show that they were made in furtherance of a project exclusively devoted to the interests of those whom the claimant purported to represent. On the other hand, those expenditures normally should be allowed which have clearly benefited the estate ... equity does not permit the estate to retain those benefits without paying for them. Such classification of expenses, at times difficult, rests in the sound discretion of the Bankruptcy Court. The District Court drew no such distinction but proceeded on the theory that reimbursement for all expenses must be denied.

*Woods v. City National Bank & Trust Co. of Chicago, supra,* 312 U.S. at 269–70, 61 S.Ct. at 497–98, 85 L.Ed. at 826 (citation omitted).

Chief Judge Learned Hand spoke of the need for such discretion in a corporate reorganization context in *Silbiger v. Prudence Bonds Corp.,* 180 F.2d 917, 920–21 (2d Cir. 1950), *cert. denied,* 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950):

> Certainly by the beginning of the Seventeenth Century it had become a commonplace that an attorney must not represent opposed interests; and the usual consequence has been that he is disbarred from receiving any fee from either, no matter how successful his labors. Nor will the court hear him urge, or let him prove, that in fact the conflict of his loyalties has had no influence upon his conduct; the prohibition is absolute and the consequence is a forfeiture of all pay ... unless there is a distinction between a corporate reorganization and an ordinary suit *inter partes.* We think that there is such a distinction ... it is reasonable not to impose an entire forfeiture of the allowance, when it comes in no part out of any group that can have been prejudiced by the attorney's divided allegiance ... we agree that Silbiger (attorney) failed in his duty when he did not present this matter to the court and learn its pleasure; and we agree that for that failure he may not have a full allowance; but we are disposed to make an excep-

tion from the usual consequence which imposes forfeiture of all pay.

*Id.* (footnotes omitted, parenthetical supplied for clarity).

In *Berner v. Equitable Office Building Corp.*, 175 F.2d 218, 222 (2d Cir.1949), Judge Hand reversed the District Court's complete disallowance of an attorney's compensation and remanded with instructions to the lower court to exercise its discretion to diminish the allowance "in proportion to the gravity of the breach." *Id.*, at 222.

Bankruptcy Courts have been accorded wide latitude in determining whether to allow or disallow fees in bankruptcy matters:

The allowance or disallowance of fees in bankruptcy matters normally involves an exercise of sound discretion by the bankruptcy court and is one that the court is loath to disturb.

*Stolkin v. Nachman (Matter of Stolkin)*, 472 F.2d 222, 228 (7th Cir.1973) *citing, In re Schumaker Construction, Inc.*, 346 F.2d 353, 356 (7th Cir.1965). *Accord, Fanelli v. Hensley (Matter of Triangle Chemicals, Inc.)*, 697 F.2d 1280, 1289 (5th Cir.1983). *See e.g., Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966) ("Yet we do not read these statutory words [of the Bankruptcy Act] with the ease of a computer. There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction.") (brackets supplied).

▆▆ Attorney disqualification motions rest within the sound discretion of the Federal Court. *Hull v. Celanse Corporation, supra*, 513 F.2d at 571. Even when faced with an ethics violation, a Federal Court need not grant disqualification. *See, W.T. Grant v. Haines, supra*, 531 F.2d 671, 677 (2d Cir.1976).

More recently, the First Circuit in *In re Martin*, 817 F.2d 175, 182–183 (1st Cir. 1987) stated:

Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in

regard to the terms and conditions of the engagement of professionals.... The bankruptcy Judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails. If he perceives a materially adverse interest, he has at his disposal an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of all or some fees, and invalidation of the security interest.

*Id.*, (citation omitted). In *Martin*, the Bankruptcy Court held that a mortgage on a Chapter 11 debtor's real estate in favor of debtor's attorneys, as security for the attorney's bankruptcy retainer, was not per se invalid, but rather, required a finding by the Bankruptcy Court as to whether a potential conflict of interest between the law firm and the debtor, or perception of one, rendered the law firm's interest materially adverse to the estate of creditors. The remand included a direction to the District Court to assess the appropriateness of the mortgage against the backdrop of the litigation. *See e.g., Blackburn–Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1059 (5th Cir.1986) (the Bankruptcy Court's broad equity powers permit it to allow attorney fees to a secured creditor notwithstanding an apparent conflict of interest on the part of the creditor's attorney, the exercise of this power is discretionary); *Pierson & Gaylen v. Creel & Atwood (Matter of Consolidated Bancshares, Inc.)*, 785 F.2d 1249, 1252, 1256 n. 7 (5th Cir.1986). *Bancshares* also recognized the lower courts' discretion in determining attorney's fees awards, and that the courts should not determine a conflict of interest is not present until a "painstaking analysis of the facts and precise application of precedent" has been undertaken. *Id.*, at 1256.

The Creditors in this matter have suggested Meyers has a dual representation conflict of interest. We don't discuss dual representation cases[3] because the specific

---

3. Dual representation cases typically involve an

attorney's failure to disclose its dual representa-

aspect of the "dual representation" problem that confronts us is limited to where it is disclosed that a small corporate bankrupt debtor's attorney's fees have been paid by a non-bankrupt debtor's insider and whether the mere act of this payment requires *ipso facto*, a finding of at least potential conflict of interest or an interest adverse to the debtor under § 327. This finding, in turn, would result in the attorney's disqualification from representation of the debtor-in-possession.

Three cases from the Bankruptcy Court for the District of Hawaii are cited by the Creditors as expressing a *per se* rule against representation where fees are paid by a non-debtor insider. We think the Hawaii cases are distinguishable because of their failure to disclose and creditor-payor aspects.

In *In re Bergdog Productions of Hawaii, Inc.*, 7 B.R. 890 (Bkrtcy.D.Ha.1980), the Court disapproved the appointment of an attorney for the debtor where the attorney had received payments from debtor's stockholders for services rendered to the debtor. The attorney also obtained a guarantee of further payments from debtor's stockholders for services rendered to the debtor, and made an arrangement to reimburse the guarantors from any compensation the Court may award the attorney.

> The Court will not approve the appointment under these conditions. By taking payment from stockholders of the Debtor and by obtaining a guarantee of further payments from these individuals for services rendered to the Debtor, the Attorney for the Debtor will be in a conflict of interest situation.

*Id.*, 7 B.R. at 891.

In *In re 765 Associates*, 8 B.C.D. 200, 14 B.R. 449 (Bkrtcy.D.Ha.1981), the applicant attorney had received compensation from a corporation controlled by an individual who was the debtor's general partner and an owner of a creditor corporation. Also, the applicant attorney had rendered advice to the general partners of the debtor as creditors concerning their claims, interests, and priorities in a plan of reorganization or liquidation. The Court denied compensation on the grounds of conflict of interest for divided loyalty. In addition to the Court's prohibition against a debtor's attorney being paid compensation from a creditor, the Court ruled:

> While the interest of a general partnership and the interest of its general partnership often overlap, the interest of the partnership may also conflict with the interest of its general partners. Thus, an attorney representing a general partnership should not render advice to the general partners nor receive compensation from a corporation controlled by a general partner.

*Id.*, 14 B.R. at 451.

In *In re WPMK, Inc.*, 42 B.R. 157 (Bkrtcy.D.Ha.1984), the DIP's principal and investors, all creditors of debtor, had paid the DIP's attorney fees from the DIP's estate. In addition to the attorney's failure to disclose the source of payment as ground for disqualification, the Court held the applicant attorney's "acceptance of funds from the [debtor's] principal and investors ... created a conflict of interest situation." *Id.*, 42 B.R. at 163. The *WPMK* Court not only denied compensation, but also ordered a return of the fees to the debtor's estate because:

> [a]n attorney representing a debtor should not receive payment, either directly or indirectly, from any of the creditors. *In re 765 Associates, supra,* at 451. If at anytime an attorney receives compensation from one holding an interest adverse to the estate, it is highly improper for the attorney to render ad-

tion, *see, In re Aov Industries, Inc.*, 797 F.2d 1004, 1012 (D.C.Cir.1986); *Hunter Savings Ass. v. Baggot Law Offices Co., L.P.A. (In re Georgetown of Kettering, Ltd.)*, 750 F.2d 536 (6th Cir. 1984); *In re Sixth Ave. Car Care Center*, 16 B.C.D. 1211, 81 B.R. 628, 631 (Bkrtcy.Colo. 1988), and are very fact specific. *In re Stamford Color Photo, Inc.*, 98 B.R. 135, 138 (Bkrtcy.

Conn.1989); *In re Roberts*, 75 B.R. 402, 405 (D.Utah 1987), *aff'm in part and rev'd in part, In re Roberts*, 46 B.R. 815, 833–37 (Bkrtcy.D.Utah 1985); *Roger J. Au & Sons, Inc. v. Aetna Insurance Co. (In re Roger J. Au & Sons, Inc.)*, 64 B.R. 600, 605 (N.D.Ohio 1986); *In re Star Broadcasting, Inc.*, 17 B.C.D. 1, 81 B.R. 835, 841 (Bkrtcy.N.J.1988).

vice to such person in relation to his claims and interests against the state. *Id.*

Finally, Applicant's argument that the court cannot deny the compensation and reimbursement sought herein without first finding an *actual* conflict of interest is not supported by the greater weight of case law within this jurisdiction. Time after time, in each of this court's decisions dealing with conflict of interest situations, the approval or denial of compensation has hinged upon whether or not the attorney was placed in a position of being required to choose between conflicting duties and interests.... The public policy is to avoid even potentially conflicting situations.

*Id.*, 42 B.R. at 163 (citations omitted, emphasis in original). *See, In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643, 651 (Bkrtcy.W.D.Wash.1986).

In *Matter of Global International Airways, Corp.*, 17 B.C.D. 120, 82 B.R. 520, 18 C.B.C.2d 310 (Bkrtcy.W.D.Mo.1988), a law firm sought compensation for services rendered to a Chapter 11 debtor. The majority of the services were rendered in opposing a creditor's committee's application for the appointment of special counsel to pursue the recovery of property from the debtor's former chief executive officer (CEO). Aside from the Court's holding that it questioned whether the services were rendered "in aid of administration of the estate," the Court found the CEO had paid the initial retainer, a fact not disclosed in the original application. The Court, without discussion, concluded the CEO's payment to the debtor's attorney created a conflict of interest:

But the substance of the transactions are clear. The applicant law firm had been paid, or were in the process of being paid, by [CEO] at the times in question and owed their primary allegiance to him, not to the bankruptcy estate from which they now have the temerity to seek recompense on the contention that they have rendered services, 'in aid of administration of the estate.'

*Id.*, 82 B.R. at 523 (bracket supplied).

In *In re Glenn Electric Sales Corp.*, 89 B.R. 410 (Bkrtcy.D.N.J.1988), the Court held *inter alia,* that a law firm that had received a retainer from the debtor's 100% shareholder, and who had been lent money by a creditor to retain the firm, did not represent an interest adverse to the estate as a matter of law:

The fact that ... a creditor loaned money to the principal of the debtor does not equate to representation of a creditor or potential proponent ... the payment of the retainer by the 100% shareholder does not equate to representation of that shareholder. Indeed, payment to a lawyer by one person to represent a different person is not uncommon. Insurance carriers, pre-paid legal plans, employers and parents are examples of frequent third party payers. In so deciding the court is also mindful that the debtor and it's shareholders are separate entities, but believes that it would be completely unrealistic to conclude that the interest of the debtor corporation and its 100% shareholder would conflict in this case. Here, as in so many cases in which an individual affords himself of the opportunity to utilize the corporate entity, the interest of the corporation and its sole shareholders do not run divergent or even parallel courses, rather their interests go hand in hand.

*Id.*, 89 B.R. at 416 (footnotes omitted). The Court, however, accepted the U.S. Trustee's argument against this arrangement based on the potential for a conflict of interest. The U.S. Trustee argued that it gives rise to the appearance of a conflict of interest because the law firm had either accepted payment of its retainer from a potential proponent of a plan that was affiliated with the largest creditor of the debtor, or, alternatively, because it accepted payment from the affiliate, who made the advance on behalf of the principal of the debtor:

On the facts of this case the court is not willing to extend the statute [11 USC §§ 101(13), 327(a)] to include as a disinterested party a professional who has been paid by an interested party to represent the debtor.

Even if the conflict never materializes there is the appearance of a conflict of interest. Although I am not able to cite the author, there is a saying to the effect that if it walks like a duck and talks like a duck then, in all likelihood, it's a duck.

*Id.*, 89 B.R. 417–18 (brackets supplied).

The absence of evidence of a creditor relationship between a corporate debtor and its principal did not prevent the Court in *In re Senior G & A Operating Co., Inc.*, 97 B.R. 307 (Bkrtcy.W.D.La.1989), from rejecting an insider's guarantee of fees, *sua sponte:*

The guaranty of the fees of attorneys for the Debtor may raise a question as to whom the attorneys are actually representing. Counsel's duty of undivided loyalty runs to the Debtor. That duty cannot be compromised by insiders who guaranty compensation. Insiders have been known to make prepetition transfers for personal benefit; to withdraw capital contributions under the guise of repayment of personal loans made to the debtor; to satisfy debts guaranteed by them in preference to nonguaranteed obligations; and to transfer business opportunities of a debtor to a new entity. By accepting a guaranty from an insider, a debtor's counsel may have created a potential conflict of interest.

*Id.*, 97 B.R. at 311.

In the matter before us, we were informed at the outset that Meyers had received monies from the DIP's principals to represent Kelton pre-bankruptcy, during its involuntary gap proceedings, conversion to Chapter 11 as a DIP, and ultimately, its conversion to Chapter 7. There has been no suggestion that Meyers has or may have engaged in any ethical misconduct or wrong doing. Our independent and painstaking examination of the facts confirms the absence of any actual ethical violation. Consent and full disclosure were obtained from the DIP and Kelton. We are satisfied Meyers explained to Kelton at the time he undertook representation of the DIP that his duty of loyalty was to only the DIP.

Creditors simply contend that Meyers may not under any set of circumstances represent a DIP and accept monies from the DIP's principals, and remain disinterested without actual or potential conflict under § 327. Creditors imagine hypothetical scenarios or proffer unsubstantiated factual circumstances to suggest the attorney fee retainer or payment from DIP's principal and spouse tainted Meyers from ever accepting employment from the DIP. Tinctures include: a grand jury investigation of the principal; assumed numerous transactions among the various businesses of the principal, his family, and the DIP; and, the principal's invocation of privilege against self incrimination in pre-bankruptcy State Court proceedings concerning his transactions with the DIP. "Horrible imaginings alone cannot be allowed to carry the day." *In re Martin*, 817 F.2d 175, 183 (1st Cir.1987). "Or in the night, imagining some fear, how easy is a bush supposed a bear." Shakespeare, *A Midsummer Night's Dream*, Act V, Scene 1 (1594–1596).

While there is merit to an argument for avoidance of appearance of impropriety in a proper case, we find the Creditors failed to sustain their "heavy" burden. *Evans v. Artek Systems Corp., supra*, 715 F.2d at 794 (2d Cir.1983) (*citing, Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir.1978)); *In re Stamford Color Photo, Inc., supra*, 98 B.R. at 137. This is not to say we need always find actual conflict before disqualifying counsel. The Code of Professional Responsibility admonishes us to avoid even the appearance of impropriety. *See, D.H. Overmeyer Co. v. Robson*, 750 F.2d 31, 34 (6th Cir.1984).

We reject Creditors' invitation to adopt a per se rule against this disclosed arrangement for legal representation by payment from a third party payor-insider where there is no evidence of a fee guarantee or material creditor relationship between the payor-insider and corporate debtor/client. Instead, we believe the inquiry must be case and fact specific. An equitable approach as opposed to a hard and fast rule denying employment is the better custom, and is certainly more consistent with the Code.

Many small corporations facing the threshold of the Bankruptcy Court depend upon their key, and many times solvent, insiders to fund the debtor's bankruptcy attorney for the latter's undertaking of vital pre- and post-bankruptcy representation. We counterbalance this pragmatic view with an obligatory uncharitable view, such an arrangement may be leaving the proverbial fox in charge of the hen house. We must be assured the Orwellian eye, the scowling mien, and the inquiring mind of debtor's counsel is focused where it should be—on the debtor's interests.

We impose conditions on prospective attorney employment where counsel for the debtor is otherwise funded by debtor's insiders. Our list is not exhaustive, nor must every condition be satisfied in every situation, but rather, it is to serve as a guide. In law, a man is guilty when he violates the rights of others. In ethics, he is guilty if he only thinks of doing so. *Lectures of Immanuel Kant*, Koingsberg, Germany, 1775. Our list includes:

—the arrangement must be fully disclosed to the debtor/client and the third party payor-insider;

—the debtor must give express consent to the arrangement;

—the third party payor-insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

—the factual and legal relationships between the third party payor-insider, the debtor, their respective attorneys, and their contractual arrangement concerning the fees must be fully disclosed to the Court at the outset of the debtor's bankruptcy representation;

—the debtor's attorney-applicant must demonstrate and represent to the Court's satisfaction the absence of facts that would otherwise create non-disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

We must be affirmatively satisfied with the reasonableness of the arrangement, that it was negotiated in good faith, and was necessary as a means of ensuring the engagement of competent counsel. While the Court is concerned with how the matter appears to creditors and other parties in interest, those that seek to oppose this arrangement must be able to demonstrate the attorney-applicant's non-disinterestedness by competent evidence of actual, or potential for, impermissible conflict of interest or adverse interest. Furthermore, the retainer or attorney fee payment from the third party payor-insider must be held in escrow pending interim or final disbursement by order and approval of the Court, after notice, hearing, and scrutiny by the U.S. Trustee, creditors and other parties in interest.